My name is Thomas Cox. I'm representing the appellants in this case. Also going to argue with me is Marcus Mershazen. We're going to reserve five minutes of our time for rebuttal. This is a class action case and numerous objections were filed. And I would like to briefly cover four points, and if we have time, a fifth. Our position is that the case should not have been certified for its class action. There was a lack of adequacy of representation. The attorney's fees were excessive and the notice was inadequate. And if we have time, I'd like to discuss the effect of settlement amendment number three. Now, this involved the sale of computers which, by a chip that was manufactured by the defendant, in this case, nVidia, was sold by various other manufacturers. Beginning in approximately 2006, at some point several years later, it became apparent that some of the chips had been defective. Now, my client, early on, Nikki Johnson, bought the computer in 2006. It was defective. She returned that and it was replaced on the warranty, and that computer was also defective. About a year, year and a half later, according to her affidavit, she sent it to the recycling bin after keeping the hard drive. And then two years later, she received notice of this class action. So let me ask you a question, focusing just simply on your client. If she were to pursue a claim against the defendant for the cost of her computers, how would she prove it? She effectively couldn't. And that was the judge. That runs through both briefs of the class and nVidia because the computer is gone before she knows that there's been a defective problem. So effectively, she cannot do that. So what I'm interested in is how somebody who, admittedly by you, really couldn't prove her claim one way or the other could be inadequately represented in a class action where people who could prove their claims are getting recovery. Well, part of that goes to our question about whether it was adequate class definition. Because what we found is you had to have three things to be a qualified, let me see, it was qualified. And that was you had to have purchased a computer. You had to have proof of that, of the purchase of the computer. You either had to, it had to have been defective. And then you either had to have the computer or you had to have documentation of the cost of repair from the original equipment in the manufacturer. Why is that unreasonable? If you get something and you don't, it's not working and you've thrown it away and you don't have the documentation to demonstrate what went wrong, why is that unfair or unreasonable? Because of the settlement agreement that was crafted by the class and defended, you had the computer. All you had to do was swear it was defective. We'll take your word for it. Well, that's one possibility, but that doesn't mean that requiring some demonstration. I mean, this is actually a fairly generous settlement for those people who get the settlement. And so the fact that they could have crafted it another way doesn't mean that the way they did craft it was so unreasonable that we should hold the entire thing invalid. So I'm looking for what's unreasonable about it beyond that they could have done it better or could have done it in a way that was. They could have done that they tried to do was we'll take your word for it. Just like they could have said we'll take my client's word for it that hers was defective before she threw it away. But they decided that's, we're not going to take that part's word. Why does that, we're reviewing the judge's determination that the settlement was reasonable. I think under an abuse of discretion standard. It is correct. And so how did the judge abuse discretion by in effect failing to say to the parties, you should make this settlement broader and you should cover another group of people who can't prove their claims. That goes to our point about the adequacy of representation. That they have the duty to represent the entire class. The judge has the duty to act as a fiduciary. Now, the fact that a significant number of the members of the class will receive nothing, in our opinion, calls into question the adequacy and the fairness of the settlement. So is there any showing in this case of how many people are in this group that you're talking about? There was no showing as to the number. Now, whether it was known to the class of defendants because they pointed out the immense amount of discovery that they can make, I don't know. But I don't know how many people, all I can say is that the people that objected, at least two people, Mr. Barber and my client, were the ones that had decided. Of the objectors, we have two people who fall in this category, right? Two out of the four. And I believe that it was mentioned a great deal by the Hewlett-Packard consumer objectors, but I believe they've disposed of their case already. I'm interested in this procedurally. You're the objectors. Yes. You come to the district judge and you say, well, we've got two clients who won't get anything under this. And the judge says, well, but there's thousands of people who will. Do you have some obligation to say, no, no, it's not just my two clients, there's hundreds? I think on the basis of just a general knowledge, the computer is not going to three years. If she voted in 2006, I believe the IRS guidelines for when a computer is depreciated to three years. Computers and these type of items have a very short lifespan, so I think it's reasonable sitting here in December of 2010 at the time of the fairness hearing when we know that many of these computers will have already been discarded, regardless that there is a substantial number of these people. And likewise, why can't you? But that's all speculative. There wasn't any showing. There was no showing of that at the time. As to how many. There was no way for us to know. 540,000 consumers visited the website. 84,000 requested notification. 71 class members excluded themselves. And 44 objections were filed. 19 of which were objections by people who weren't in the class, who wanted to be in the class. And less than 40,000, Your Honor, were in the. How many people do you think that Johnson is representing? I think it's in the thousands. How many? Thousands. 1,000. Oh, no, in the thousands. How do you get to that? Just on the basic knowledge of a computer that has been discarded. We have had these computers. We sent out 5 million notices. There had to be millions of computers put out there in the universe. How do you get to 1,000 again? I'm sorry. Maybe I didn't catch it. Is that just a hunch? Because we didn't, as the objectors, we had no discovery rights on this site. I didn't say what didn't you have. I'm asking you, what did you have to get to the 1,000? The fact that the number of claims that were filed, we've got less than 40,000. And we're going to take your word for it. If you have your computer left, we'll take your word for it that it was defective. We're not going to test your computer, which you had the capability to do. But we're just going to take your word for it. For people like Ms. Johnson, we're not going to take your word for it that it was defective. But we wouldn't have tested it even if you had it. But it's a settlement. And the defendants are saying, look, we're not going to fight everybody. We'll pay some money. But we don't want to be subject to the public at large coming in and saying, well, I bought one of these, but I lost all the documentation. And give me something, too. And so the defendants say, I want a limit put on this. I want somebody to be able to show in some way that they were part of this class, other than their word. And your client is in that group of people who can't show it other than by her word, right? She was able to show. She submitted all her paperwork, that she had the computer and her affidavit. The second one, she had the original one replaced. But what they're saying is, look, we really want to see that we, you know, we're only going to pay people that can show us the money, show us the computer. No, they really didn't. All they said is you have to sign an affidavit that you still have it. You didn't have to send the computer in to them. So is your objection that the class settlement didn't require them to send the computer back? Well, one of our objections is that they didn't adequately represent the people that had disposed of the computer that would say, look. Well, I know that's your conclusion, but I'm trying to figure out what, how would it, you originally said, well, they just should have been included in the class. They just should have been included in the settlement, right? We should have been included in the settlement. But the defendant, who's part of this, says, I'm not willing to settle on that basis. I'm willing to settle on, you know, I'm not willing to give everybody money. I'm willing to, I'm only willing to give money to the people who currently have computers. And the plaintiff's lawyers say, well, we could try the case and spend a lot of money and perhaps reach a different conclusion, but we don't think we're going to be able to prove up anything with respect to people who don't have their computers anymore. So let's settle this and leave those people their individual claims to pursue. Why is that unfair? Because the individual people won't have any claims to pursue. But if they have weak claims that they can't prove, I guess I'm still having a hard time seeing why it's an abuse of discretion for the district court to approve a settlement that does not include people who have weak claims that they can't prove. I guess, and we'll go back to the Fiber, Ortiz and Fiber Board, and recently decided to do a versus Volkswagen out of the Third Circuit. They have an obligation to represent everybody. If there is going to be that, there should. And the question is, were the class representatives from, such as my client, or were all the class representatives individuals that had their computers? There's a question about that. Were the class representatives, the class counsel, did they cover everybody? And I would say if they did not have members in the class representatives that included people such as my client, then there's a problem with the radicalcy of representation that they should have. And that enough would be sufficient to remand it. Or shouldn't it be that the class should have been more narrowly defined to have excluded your client in the first place? Excuse me. Could you repeat that? Sure. Is the problem here that the class should have been more narrowly defined so as to exclude your client in the first place? I don't know the answer to that one because I don't know how they could have. But say you had a computer and it was defective. No, I don't think you really could have. But aren't you free today to file a class action on behalf of people similarly situated to your client? After all this time with the release, that comes into the carve-out of whether that was. There's a carve-out that says those folks are able still to pursue their claims, right? And they pursued those claims in another court, and that court ruled against them, which I believe NVIDIA points out in their brief that both there were risks, that the carve-out really wasn't an effective carve-out. It wouldn't have been effective anyway by the time that this comes out. So they were really only free to pursue individual claims. And that remedy is ineffective. Were you planning to share time now, or was your counsel going to take the five minutes? I think I better move out of the way right now. If it please the Court, I'm here on the issue of notice. And we think that the best notice practical theory is one that would call for a little better notice here. The website, which is a good way of giving notice, particularly to computer people, was misused in this case. The information on the website did not match with the full notice. And when it talks about the use of computers for personal use or not for resale, that wasn't that which was contained in the order. Now, when you give a misleading statement in the website, you then have to wonder if the people who would be affected by that, in looking it up or receiving notice, are actually going to look for the attached documentation, the full notice, any forms, or that type of thing. And our understanding that once you look at something, it indicates personal use as opposed to commercial use, or maybe you were going to sell it or not. People would leave it alone. And one of the reasons we have to think that is, when you have 540,000 hits on the website, and 84,000 people apparently sending stuff in or inquiring further, that seems like a sufficient reduction where the mistake on the website, even if innocent, makes it problematic. So... But what do you have other than speculation as to why the remaining half million people didn't choose to pursue it further? Maybe they got it fixed and they're happy, or maybe theirs didn't have a problem, or any number of reasons. Or maybe they hate lawyers and they don't want to be part of litigation. I mean, how do we know that there's any cause-and-effect relationship between this, you know, you can't be a commercial reseller and all these people not filing claims? Well, I don't know that by definition I'm prepared to say what the precise reason is. What I can simply say is the website was at odds with the full notice. If you're going to give notice, then give it according to what the court ruled and let that be done. If you don't, then I'm in the position of speculating along with everyone else unless we do some discovery or find out why there's a $500,000, or a 500,000 person difference. What items, Mr. Murchison, did you see that were not on the website notice that were in the order other than the one you cited for personal use and not for resale? Those are the items that I would base my argument on. That's it. I'd limit it to that. Do you have any evidence that persons who bought these computers for resale did not attempt to join the class? No. Okay. Can you point to where in the record the website is, the website notice is? I'm afraid I can't right now. I don't have my reading glasses with me and I can't see my briefcase. But you put the website in the record in the district court? Correct. Good. I'm having some difficulty finding it. But you do agree that the website contained the court orders? Correct. Which you'd have to click on the court order. Right. After you originally got on the website. And generally with my experience in life in computers, I've learned that if you read that you're excluded, you generally, like a jury form, you get a verdict, you answer a question, don't go any further. Likely that's what happened. And that seems reasonable and prudent. And your objection is to, see, the reason that I'm having some difficulty is I'm looking for the specific language that you object to. I find it in your brief, but I'm not sure I find it in the record. And if it's there, I'll find it. But I'm not sure I can. And I don't see a site to it in your briefs, that's why I'm asking. Okay. I'm a bit at a disadvantage after not being able to find my file. And perhaps you can just file a 28-J and let us know where we can find it in the record. Okay. If you'd like to save, you have about three minutes left for rebuttal. I'm done. I said what I had to say, and thank you very much. Thank you, sir. And we will next hear from whoever's next. Good morning, Your Honor. I don't know who's who, so. May it please the Court. I'm Robert Varian, representing NVIDIA. I think I'll handle the bulk of the argument, although Ms. Duckett, representing plaintiffs in the class, will also speak a little bit at the end. The Court has raised a number of important questions. I would like to say at the beginning that this is an extraordinary settlement by any measure. It's not your garden variety settlement at all. It represents what I would, I think, say without overstatement, was a Herculean effort to overcome a bunch of really difficult problems to get relief to class members in a very timely manner. And I think that the remedy that was afforded far exceeds any possible litigation outcome, which I think is the key test. Your Honors are obviously well aware of this Court's decisions about deference to the district court, and I won't go through all of those standards. I want to say that the legal claims, first of all, were unprecedented. NVIDIA makes chips, not computers, so there had never actually been a case in the history of jurisprudence that we could find anywhere in which any time in the 20-something or 30-year, depending on how you count it, history of the computer industry, anybody ever sued a component manufacturer, an upstream component manufacturer. And that required everyone to work together. NVIDIA worked cooperatively with three OEMs, Apple, Dell, and Hewlett-Packard, to fashion a settlement and overcome very difficult problems, logistical problems, which is why the notices are long. Counsel, let me ask you a question about the notices, which Judge Hurwitz has also asked about previously. There's some argument back and forth about whether this purchasing computers for your own personal use and not for resale is misleading or incomplete, and your side of the briefing says, oh, it's not a problem because there was a link to the full notice that you could easily click on. But neither of you cites where in the record to find that. Do you have a citation to the record? Your Honor, I'm not absolutely sure that the website reference that the appellants have referred to is in the record. I could be wrong. We will look. We tried to look quickly when it came up just a minute ago. Well, in the briefing, I'm not sure that either side pointed to a page where we could read that. I mean, we have the full notices, which presumably were clickable to, if that's a term. And my understanding is that, at least from the argument we've heard today, the main argument is not against the notice that the Court approved. The argument is that the website was somehow misleading, and I'm trying to figure out how we can judge that argument in the absence of the website. Let me just clarify, maybe put in a little context here. The Court approved notice, and the Court approved summary notice. The approved notice was disseminated directly, either by postcard mailing or e-mail mailing, to about 5 million people. So that's the exact notice that the Court approved. So you're saying that everybody got the full notice individually. So the fact, is that your argument? So that if the website used some shorthand, that's irrelevant? Correct, Your Honor. The notice that was approved went to everybody. And I think this is a tiny little glitch in the website. It's not a difference among various forms of notice that were sent to people, and there are cases that address that. Of course, the standard for notice is due process, and does it violate due process? And this Court's decision in in-ray cement and concrete antitrust litigation describes the requirement, and it's only that the notice be reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present objections. And of course, that was satisfied here. So if mail notice was sent to everybody in the class, obviously there were people who didn't get it, correct? There was publication notice as well, Your Honor. So all of the notice... So all these other ways were a method of ensuring that the class members got notice. With respect to the website, which got a large number of hits, according to the record, I'm just trying to figure out whether that's sufficiently misleading so as to obviate the other problem, the obviously sufficient notice given otherwise. And so, okay. Yes, Your Honor, you're touching on a very important point, I think. The process is due standard. Notice doesn't have to be perfect, and there are cases in which different forms of notice, which were inconsistent in various ways, went out to class members, which is not the case that we have here. All of the court-approved notice went to everyone through direct mailing that could be reached, which is a bunch of folks. And then that was the publication notice in various forms. And we have that. That's the USA Today and other publication notices that we've seen in the record. Yes, Your Honor, and also on various computer magazines online, and it was quite fulsome notice. But my point, I guess, is in each one of those cases, the notice approved by the court went to everybody. And on the website, which is just supplemental and shorthand and not designed to be the notice, obviously, which everybody got, there's a prominent link to the notice and to the summary of notice. So, you know, there's no real problem here. The issue, I guess, if you can call it that, is the website said something about purchasing your computer for personal use and not for resale. I think that would make no difference, even if it were in the notice or one of the notices, which it was not. It wouldn't affect substantial rights. And, you know, there's an Agent Orange product liability case that goes back to 1987 in the Second Circuit, which dealt with a situation in which the notices that went out had discrepancies, you know, arguably bigger than the discrepancy on the website here, which I think is de minimis and could not possibly have affected anyone's rights in the real world. And the court said, you know, it doesn't have to be perfect. It has to satisfy due process, which, of course, is the standard. Let me ask you. I don't want to spend all our time on notice, but I'm trying to figure out the record here. Presumably the objectors went to the district court and said there's something wrong with the website notice, or did they? Your Honor, I am not absolutely certain. I don't remember that objection being made. Obviously, it must have been made or they couldn't appeal it, so I'm assuming that it was. One of my difficulties is I'm not sure I can find all the places where it was made with this specificity, and that's why I'm trying to figure out what arguments have been preserved for appeal. If you don't know offhand. It certainly wasn't an issue that I even recall. See, I'm trying to figure out how a hearing would have gone had somebody gone to the district judge and said the website is misleading, and the district judge presumably would have said, yeah, fix it. But I don't see anything in this record that goes like that. There isn't anything like that, Your Honor. It certainly wasn't a prominent objection. I'm assuming it was made. I have no recollection of it, so it wasn't something that got any attention either at the preliminary approval stage or at the pretty fulsome final approval hearing. So I guess my point again is it just has to satisfy due process, which it clearly did, and even in cases where there are real problems with the notice itself, which we don't have here. This is just a shorthand summary on the website, which links to the full court-approved notice that everybody got, which was used everywhere else. We just have this, you know, random phrase that says, for personal use and not resale. Of course, that's probably accurate in some ways, although no condition like that was imposed in this settlement. It probably could have been because these are consumer remedies, and most of them require that. But it's a de minimis point. It didn't find its way into the notice, even if it were more than de minimis, which it's not. The website is just additional information, and the notice, I think, was fine. It certainly satisfied due process, which is the real requirement at this point. Is there any way, Mr. Varian, that we could find how many persons were excluded from the class because they bought for resale? I'm sure none were, Your Honor. I think I can say that with confidence. There were very few people excluded from the class, and none would have been excluded on that basis because that wasn't in the settlement agreement. It wasn't in the notice. And the settlement administrator would be able to do that. People were scared away by reading the website and didn't make a claim. Yeah. There's no way to know that, obviously, Your Honor. My, I think, informed speculation, if I can call it that, is no one. Because that wasn't a big barrier. It wasn't. I mean, these are people who bought. Because these were State remedies for consumers. Yes, Your Honor. Not for retailers. That's correct, Your Honor. So it could not possibly have affected substantial rights, even if there had been some glitch in the notice, which there was not. I'd like to move quickly, with the Court's permission, to this question about people who didn't have their computers. First of all, the evidence on that is that there were five people who objected after receiving 5 million direct notices that they didn't have their computers. So the evidence doesn't indicate at all that this was a significant issue for anybody. Second, as the Court, I think, pointed out in some of the questioning, the law is very, very clear that you couldn't pursue a claim in this case without your computer. So it's a de minimis issue. If you don't have a claim to preserve, one that you could actually assert in court, it doesn't matter, and there's a decision of this Court that I think says that. Well, you couldn't. You wouldn't be literally unable to if you had had, you know, an expert examine your computer before you discarded it and you had that person come and testify that, you know, last week I examined this and so on and so forth. I mean, in theory, there could be a claim. I think, Your Honor, even in theory, in that hypothetical, there would not be a claim. And the reason is that the cases really go two ways on this to the same result. One is, as the plaintiff, you can't prove your case, meet your affirmative burden of proving injury and causation. Now, Your Honor's hypothetical might satisfy that if you have an expert who saw it in real time and can testify, might discharge that affirmative burden. But the other way cases have approached this is spoliation from the defendant's point of view. And if my expert didn't get to look at it, then the case would be dismissed for that reason alone. So ---- And I take it the nature of the defect of the chip in this case, or the alleged defect, since you didn't admit any fault, was that it sometimes affected computer performance but not always. That's correct, Your Honor. And let me just try to ---- this is not as clear cut in garden variety cases as we're all used to dealing with in the product field. There's a chip that was incorporated in many different computers. And there are issues about even finding which computers had the chip which were resolved in the settlement, I think. And that's how we got relief to a lot of people. But even where we have chips which have this material set, it's the materials in the chip that create this problem, that's still pretty rare. And the actual failures as a result of this material set in the chip are rare. And we tried to estimate it. We came up with 1 percent. It might be a little more than that. It's really hard to say. But the point is that just because you had symptoms of ---- and they were pretty broad doesn't mean there was any real injury as a result of the chip problem that was the issue in this litigation. And, in fact, this settlement really, I think, surmounted all of those problems and said we're not going to even do any testing. If you had these symptoms and you had a good chance of having a computer that had this chip in it, even though we know for sure that in most cases it wasn't going to cause any problem and these symptoms would, in fact, be caused by a whole new chip, it would give you either a new computer, in the case of HP, or a new motherboard, which would go far beyond any problem with the chips. So you would probably in this settlement be solving a bunch of problems that really are not even related to the claim. Isn't that the basis of one of the objectors' arguments? I think what they're saying, if I can rephrase it for them, and maybe you can respond to it, is, look, you included a whole mess of people who really didn't have a problem in order to avoid the costs of litigation. But the plaintiff's counsel didn't include us, and we're really quite similarly situated to the rest of those people. We have proof of purchase. We may or may not have been affected. Our computers may or may not have been defective. So you have this broad range of people whom you're requiring really very little proof that they suffered any damage. But you've excluded us, and that's unfair. That's their argument, I think. Would you respond to that? I will, Your Honor. First, there was a requirement that you turn in the computer. So I just want to correct that for the record. Second, if you think about it, in this case in particular, requiring the computer is a very reasonable requirement to avoid the possibility of fraudulent claims, as the cases talk about. So, for example, if you didn't have to turn in your computer. You could have two perfectly good computers. Sure. I could get a brand-new computer. I could say, you know, I bought this HP computer. Here's my documentation. Fill out the form. Check a box. It says I'm having these kinds of problems. Not turn in the computer and get a brand-new second computer, which obviously would be fraudulent and increase the cost of the settlement for everybody. So in your view, one way to police the class, if you will, was to make sure that they handed in their computers? Yes, Your Honor. And that's the case law I think is pretty good on this. There's a district court case in the Northern District of California called Fulford v. Logitech, a computer case. And it talks about reasonable safeguards, even if they're going to exclude some people who might have a problem in constructing a settlement. Of course, the parties can take reasonable measures to avoid fraud. And I think that's what this is. It's a very reasonable measure. And I think, you know, the alternative would be just to open up the doors to all kinds of potentially fraudulent claims that no one could ever police in any way, shape, or form. I want to stop unless the Court has questions and let my colleague. You may do that. Thank you. Good morning. May it please the Court. I'm Nicole Duckett on behalf of the class. First, I'd just like to quickly emphasize some of the points made by Mr. Varian, but from the class perspective. This was a really serious settlement. It was very hard fought. And it's unique in the sense that the relief we saw when we filed it initially is exactly the relief we got in the end. We went after the original component manufacturer, which was a risk, as the defendant points out, and were able to get a complete fix of the problem. NVIDIA vigorously fought against our claims, particularly on that issue of privity against a component manufacturer. And it did take three sessions with a well-known retired federal judge to finally settle the case. His views as to the fairness of the process and the hard-fought nature of the litigation are certainly relevant here. There was a great benefit to the class. There was absolutely no limit on the number of repairs or replacements that NVIDIA was exposed to pay for. And the reimbursement costs were actually on top of that. So the actual exposure that NVIDIA was required to pay was quite large. And the extended warranties that were granted were also significant, particularly because these consumers were having a hard time with the original equipment manufacturers getting those warranty extensions. Also, the notice program was extremely robust. Mail notice to 3 million consumers, an additional e-mail notice to another 2 million consumers, the website, the publications. There was an 800 number that was toll-free with automated information, also live support. And we even convinced NVIDIA to send out additional notices once the computer models were expanded. And we insisted... Sure. I mean, again, it was supplemental to the court-approved notices that, as I mentioned, went out to 5 million people. And if there was any confusion that was caused by the website, which there certainly is no evidence that there was, those people were free to call up. There was a phone number to call to ask for help, to ask, you know, what does this mean vis-à-vis the notices. And, again, the notices that were sent out did not include that language. And with this just being a supplement, it's really hard to envision how that would have led to some confusion. And I'd also just like to take the rest of my time to talk a little bit about the attorney's fee that was awarded. The objectors have not shown an absence of evidence in the record that would apply a Lodestar analysis. That is what he did. That is what we asked him to do. And he really did have an ample record in front of him with which to do that. He was the judge that sat on the case during the two years of very heavily fought litigation. So he was very much aware of the complexities of this case, the factual issues, the legal issues. He also had a record of, I believe, 21 attorney declarations with extreme detail on time and expense, worked on biographies of the attorneys. So the evidence in front of him to do the analysis he did was very substantial. He applied a very low multiplier. The cases we cite, both California cases and federal cases, suggest that the multiplier he applied was definitely at the very low end. So we feel that his analysis was definitely reasonable, supported by the case law, supported by the record. The objectors don't really, as I mentioned, cite to any lack of evidence. They just sort of speculate that the judge didn't follow the curve factors. But if you look at his order, specifically paragraph 17b through paragraph 17g, you see that he did, in fact, consider the curve factors. And he talked about things such as the complexity and novelty of the case, the hard-fought nature of the litigation, the skill and perseverance of class counsel, and the possibility of no relief if the settlement were not reached. These were certainly many of the factors that he looked at in deciding that the fee was indeed reasonable. And he also had a lot of information on the value of the settlement available to him if he did choose to do a cross-check. And he also mentioned that he looked at or took into consideration the declaration of the mediator because there was already another Federal judge who had found this to be a fair and reasonable amount. Thank you, counsel. Thank you. The case just argued is submitted. Oh, no, I'm sorry. You have rebuttal time. You have at least three minutes. Yes, you do. Oh, sure. First, I'd like to respond to the question concerning the size of the people, the number of people that were similar to my client. When you go back and you look at the transcript of the preliminary approval hearing, which was on August 30th, 2010, it was admitted at that time that people had discarded their computers, would receive nothing. What page specifically? From our record excerpts, it's page 381. From the record excerpts of the Hewlett-Packard Computer Consumer Objectors and the Johnson excerpts. And later, then we get settlement amendment number three, which supposedly is this carve-out. If there was no concern that there weren't a significant number of people, then why did we have settlement agreement number three? And then why was the judge, where told in the hearing in December, that, oh, yeah, these people have been carved out, but effectively I think that carve-out was ineffective? And for the other point I would comment, I do, I was mistaken. It required to turn in your computers, but the computers weren't tested. All you had to have was a computer. If you turned it in, you got a new computer, whether it was defective or not, which we question is why shouldn't my client, who had actually had the proof of purchase at the proper time, why couldn't we accept her word that the computer was defective? So I think the number of people were sufficient enough that it caused concern that this was a significant number of people. It wasn't one or two people that were isolated, such as Ms. Johnson or Mr. Barber. Now, the, back to the problem about the representation. When you have this, did they adequately represent a significant number of people which they included in the class, but yet were going to get nothing? And I understand that any compromise, you know, of litigation requires compromise on some point, but I think it was inappropriate. I think they failed to represent the client adequately in this. And I think another fatal defect in this is, again, when we require the turn-in, you must tailor your class specifically. In this case, every computer that came in probably wasn't defective. We didn't test them. And that was the novelty of a void to make sure we had the commonality and typicality. We're just going to take your word for it that the computer was defective. And for that reason, I think the Court should send it back to the district clerk, excuse me, district court. Thank you. Thank you. Is there further rebuttal from co-counsel? Okay. Now the case is submitted, and I apologize for having said that earlier. And we appreciate the arguments that all of you have put forward. They've been very helpful. With that, we will be adjourned for this morning's session.
judges: Graber, Bea, Hurwitz